Good morning your honors, I'd like to reserve three minutes. You may. This is not the biggest case you're going to hear today in terms of the damages. This is a small farmer up in lower Michigan, but it's important to thousands, even tens of thousands of farmers throughout the country. Cumulatively, most of the soybean and corn farmers are enrolled in these agricultural programs. They enroll to reduce risk, to reduce price volatility, and to ensure a stable food supply. But the deal has changed. Until this administration in 2009, generally there was a fairly cooperative relationship between farmers and the agency. In recent years, enforcement has really tightened up. The definitions of what is a wetland and what is conversion have become much stricter. And simultaneously, at the same time that the agency is sweeping more conduct into the scope of prohibited conduct, the exemptions have been systematically narrowed increasingly. So that's what's at stake here, is how far can the agency go in terms of tightening these restrictions and narrowing the exemptions. Just a few seconds on the facts. The facts are different from the cases that you may have read in other jurisdictions. The main reason it's different is because in this case there is no dispute that the land itself had been tiled and productively farmed. A lot of cases in front of other circuits and in front of other district courts have focused on whether or not, you know, is this farmer making something up? Was this really tiled before 1985? Here that's not an issue. My father found this in an old refrigerator in his mother's basement. This is the actual conservation plan showing the tiling that the USDA helped design and pay for back in the early 1960s. So how complicated and burdensome is it to return this to wetlands? It would involve driving your tractors around, making turns on what are called headlands, which is the area of the field where you have to turn around. It results in increased compaction. How big is the overall plot of land? About 50 acres, your honor. And this is right in the middle of it. As you may have read, it's a little, very isolated topographical depression, kind of a bowl. And at the northern part of the depression, they cut a ditch through the most it is, is 2.24 acres. We claim it's much smaller than that. The standard of review... What would it cost to do that? I mean, is the problem here losing land that you could farm? Or is the problem the cost of, you know, making a wetland again? The cost of making it a wetland again is the opportunity cost of not being able to farm it. Okay. One could let the land go and if you don't fix the tile and you don't maintain the land, it falls into disrepair and it will naturally evolve into a wetland. At this point, we fixed the tile. We basically unplugged the tile and now it drains again. So we're farming it now. Mitigation, that's restoration. Mitigation is a slightly different concept. That's where you take other productive farmland and you impose a conservation easement on it so that it cannot be farmed ever again or developed in the future. And Mr. Smith is unwilling to do that. And part of the question is whether they are entitled to impose a mitigation condition as a price of giving you a reduction in penalty or an exemption. Is that the question? That is the issue, Your Honor. The district court imposed mitigation as a requirement in two of the three legal issues before you. The first is whether or not mitigation is a requirement for this minimal effects analysis and consideration. The second is whether mitigation is a requirement for consideration of a reduced penalty. I'm sorry, when you said the district court imposed it, isn't the district court upheld the agriculture department imposing those requirements? Not exactly, Your Honor, because the agency never maintained that mitigation was a prerequisite for a minimal effects analysis. For minimal effects, what about for the reduced penalty? They have maintained consistently that mitigation was a requirement. However, the director of the National Appeals Division, and I'm sorry for all the procedural complexities in this case. It is a maze. But at one point, the director of the National Appeals Division determined that mitigation was not a requirement. But in this particular case, they are imposing it on you. The district court is at least, and now the agency is as well. I guess I thought that was their position. It wasn't the district court going beyond what they wanted to do. Not for that, the second of the three questions, Your Honor. So the standard of review, of course, this court reviews issues of law de novo. But I just wanted to comment a little bit on the standard review because the agency is all over the map in its brief. At one point, it claims that the standard of review is de novo. At another point, it says that this court must presume is valid and apply a rational basis test to whether the agency action had a rational basis. That simply is not the law, Your Honors. I encourage the court to look at the motor vehicles case where it says that the standard of review, for issues of fact at least, is not rational basis. They're misconstruing the language. The court has a clear and searching review of the record to see whether or not there was a rational reason for the agency's action. That's far different from a rational basis review if some legislation were being challenged as a constitutional matter. So turning to minimal effects, I won't rehearse all of the laws. It's on page 21 of our original brief, which clearly lays out the requirement that the agency do two things. It has to consider our evidence of minimal effects and it has to conduct an analysis of whether there are minimal effects. Now, the agency does not attempt to argue that it ever conducted any analysis. The agency says we weren't required to conduct an analysis because you didn't ask until after the fact. And so if you come to us after you've already converted, then we're not required to do minimal effects analysis. That's simply not the law, Your Honor. We've cited paragraph 515.1 of this awkwardly named National Food Safety Act manual. And that provision clearly spells out that they are to conduct a minimal effects analysis. And as soon as we got the determination... What's the obligation of the landowner to trigger that analysis, if any? How must it be specifically requested or demanded or somehow otherwise triggered? In our first letter appealing the adverse determination, we said we don't believe this is correct because the impact of the activity had only a minimal effect. From that point on, we raised it consistently in front of a mediation panel and, of course, throughout the administrative proceedings and the administrative appeals. If there's some magic words that we have to utter or magic form we have to fill out, it was never told to us. And it's never been briefed that we had to do anything besides put it out there and say, look, we don't think we did anything wrong or it had minimal effects. Your position is that you successfully at least raised the issue at an appropriately early time? Absolutely, Your Honor. And as you can tell from the tone of my brief, we were very troubled that they refused even to pick up our expert's report. When we presented it at mediation, we had spent quite a lot of money on that report and asked them to please review the minimal effects and they refused even to consider it. My time is going by quickly here, so I just wanted to make sure that I touched on also the issue of whether or not the law, this is Section 3822, grandfather's in land that was earlier prior converted. This is an important issue. The question is whether or not this court engages in a Chevron analysis on whether or not the interpretation of the statute is entitled to deference. You agree Chevron, you don't disagree that Chevron's the framework, right? Chevron is the framework, Your Honor. That's correct. You're thinking it's step one you win? Yes, sir. Step one. There's no ambiguity about this? We believe for four or five different reasons, there is no ambiguity. Just give me one good one. The plain reading of the statute, Your Honor. The plain reading of the statute has a date in parentheticals. The Supreme Court has instructed a parenthetical is just a parenthetical. What's in the parenthetical does not alter the meaning of the statute. The first antecedent date outside the parenthetical is the date that the property was previously identified as a wetland. We maintain that happened in 1964. The Eighth Circuit, your sister's circuit, has construed it the way I'm proposing. When you say the date outside it, we're talking the phrase a wetland previously identified as a converted wetland? Yes, sir. There's no date in that. That is not talking about a date. It's talking about a condition. Well, previously is a chronological term. Okay, but you're trying to take this Supreme Court statement to mean that the parenthetical has no meaning and no effect? I mean, why did they put that date in there? If the original conversion was commenced before December, that sounds like, you know, a normal condition precedent that you write in a sentence or a statute. And you think about was the original conversion commenced before that date? And you're just saying it has no meaning? When the court looks at the very next provision, Section E, which I did not reprint in the brief, but Section E specifically talks about the date of the determination being very important. The next section hinges on Section E. And depending on your appetite for legislative history, both in 1985 and in 1990, the legislative history says that Congress wanted to grandfather in... Even people that believe in legislative history agree that you don't look at it unless the statute's ambiguous. In other words, no one thinks you start with legislative history. Everyone thinks to the extent you're going to look at it at all, it's only because there's an ambiguity in the text. Well, if there's an ambiguity in the text, that's not very helpful at trying to win a step one Chevron argument. My time is up. Okay, now go ahead and answer that, and then I have one more. Go ahead. We never go past step one of the Chevron analysis, but the legislative history should inform the court on what the congressional intent was. Don't you agree that you only look at legislative history if there's ambiguity in the text? I submit that under a strict construction of the Chevron analysis, one need not look at legislative history, but it's not entirely prohibited in order to inform the court of what Congress intended. So with one eye, we're looking at legislative history, and the other eye, we're ignoring the fact that if it's ambiguous, we defer to the agency? Well, Your Honor, it seems cross-eyed. I've answered it as best I can. Okay, let me ask you, and see if I've got the dates right, because I've had some of these same questions, but this language was added in 1996. Is that correct? Yes, Your Honor. All right. And in 1996, they say, if it was previously identified as converted wetland, and then they put in, if the conversion commenced before December 23, 1985, and you say they wanted to grandfather, clearly wanted to grandfather something, but under your interpretation, if you went out the week before Congress enacted the statute in 96 and destroyed the wetland, you would still be grandfathered. And then what is there that says they intended to grandfather that rather than grandfathering the people before 1985? Now, why they pick that date, I don't know. If you have a, if that's in the legislative history, I'd be interested. Your Honor, I confess I lost track of your question. Okay. All right. As I understand the fuss here, the statute was enacted in 1996. Your position is... 1986, Your Honor. 86? The original wetland statute. No, but this particular provision that we've been talking about, a wetland previously identified as a converted wetland if it commenced before December 23 of 85. For some reason, I think it was 1990. Okay, but in any event, it's some date significantly after, that is, there's a period of time between the 1985 date and the enactment. Are we agreed there? Yes, sir. Okay. Your interpretation is it's grandfathered even if you converted the wetland the week before Congress passes the law. In which time? The first time or the second time? The amendment, the 1990 or 1996 amendment. No, because the parenthetical does have some significance. The parenthetical says the conversion had to have commenced before 1985. But we're just saying that the date, the antecedent date, that date has to be a conversion that was identified by the agency at some point. It could have been after 1985. It could have been before 1985. Here it was 1964. Does that... I'm feeling I'm not answering your question. Let me suggest that you're reading section D as though it says the last clause of it, the operative clause, but that the secretary determines returned to wetland status after that date, but that you're reading it as though it says returned to wetland status after that identification. Yes, Your Honor. Referring back to the previously identified as a converted wetland. Yes, Your Honor. So the date means identification in your argument. All right. Thank you. Taking our best shot. You'll have your time for rebuttal. Good. That was helpful. Good morning, Your Honors. Please, the court. For the appellee, Department of Agriculture, all due respect to the appellant and the appellant's counsel, this is a family thing and he has lived through it and with it. There's a five decade history attached to this case, beginning with the 1961 Soil and Water Conservation Plan. I will never have his perspective. I do know, however, that this is not a case of the agency on a vendetta or hiding the ball from the appellant. It's the appellant that set the case in motion when he filed the Form AD-1026 certification, indicating that he intended to either create a new drainage system or conduct land leveling, filling, dredging, or stump removal in 2008 or 2009. This is on that 2.24 acre wetland. That happened in 2008. When he filed the certification. Right. Was he farming it at that point? Was he farming this parcel or was that he was getting ready? He was getting ready. As I understand it, Your Honor, that particular parcel was designated a wetland as far back as 1988, then delineated again in 1993, but he had gone back to wetland, which plays into Your Honor's questions about the December 23rd, 1985 date in the statute and whether it was prior converted. And I suppose when that certification was made appellant having a long history of being conservation conscious for decades, I believe he presumed that he was going to have a prior converted wetland. The exemption, an exemption from ineligibility under 16 USC section 3821, the swamp buster provisions, but that legislation was intended to protect wetlands as they existed on December 23rd, 1985, which is the enactment date of the statute and penalize withdrawals without attempting to restore. That's the enactment date of the original statute. And then we seem to have some dispute about when this grandfathering amendment was enacted. Do you have a view on that? Yes, Your Honor. I think the analysis that the agency has been maintaining and that was upheld by Horn Farms and the Seventh Circuit and the Southern District of Indiana in 2013 is that if the wetland was converted to a cropland before December 23rd, 1985, and it had been abandoned as a cropland and reverted to wetland status before that date, that date being December 23rd, 1985, and maintained its wetland characteristics on that date, the land could not be certified as prior converted cropland, but instead would always be treated as a wetland. And that was a situation here where the 2.24 acres had reverted back to a wetland prior to December 23rd, 1985. On December 23rd, 1985, it was still a wetland. Congress established this framework to advance its goal of slowing the conversion of critical wetlands to agricultural lands while allowing individuals who were farming converted wetlands in 1985 to continue to farm those lands without becoming ineligible to participate. Let's say you're right about the statutory construction issue. What about the penalty reduction? I mean, this, I will say this, you say this is not a vendetta and so forth, but when I look at that part of the case, I say, boy, this seems pretty innocent. And, you know, the agency, what's it called? The Farm Service Agency's explanation for not giving any reduction in the penalty and references one point, doesn't reference all the factors, doesn't discuss the other factors. Why is that? I mean, I realize arbitrary and capricious is a pretty favorable standard for you. But when you talk about just one of the factors, none of the others, some of the others seems like they're kind of compelling here. That seems a little bothersome. Your Honor, I think the agency did more than just narrow it. The case has been boiled down to the point where it is in front of this panel at this point. But there are thousands of pages, hundreds, even thousands of pages of reports and submissions by the appellant. That would seem to make it very easy to have an explanation for no penalty reduction. Just reference all the things, reference all the factors, and it's probably not going to be arbitrary and capricious. But that's not what you did. I mean, the more pages there are, the longer it is, the more bizarre it is that when it comes to this really important point, you say almost nothing. You're talking about the minimal effects? No, the penalty reduction. All that's mentioned is mitigation and aren't there lots of other factors? Yes, there are a lot of other factors. But I think by that point in the case, the fact that the appellant would not come to the mitigation or restoration table colored the reaction of the agency. Well, but just because it colors your reaction doesn't mean you're entitled to ignore the law. And colored reactions are often prejudiced reactions. I mean, what does that mean? You're fed up with them, is what you're saying. I wasn't at those hearings, Your Honor. But I know they may have narrowed the initial. They admitted that to go back, let's take another look at this. The county committee and the state took a look at it about the reduction in penalty. Looked it back and said, yeah, given this farmer's history, I think the deputy director or for farm programs, the deputy administrator of farm programs, I think you should take another look at this and consider a reduction in the penalty. But what do you mean another look? The county committee recommended a reduction, did it not? Correct. Who are these county committees comprised of, federal functionaries or are these like friends and neighbors and competitors? How is that structured? I think, Your Honor, that is structured with state, actual county individuals. I don't think it's a federal entity. County individuals, meaning county employees or volunteers, how does that work? I don't know. I do not know for sure, Your Honor. But I think the county committee made up of county residents. I don't know that they have titles beyond. It's kind of like a draft board. That is, they have some status, but they're from local people that are chosen some way. I think that is correct, Your Honor. But having gone through the conversion fight and that it was not entitled to the prior converted exemption, we move into the minimal effects and penalty reduction is the final version. When the appellant couldn't change course on the conversion, the prior converted exemption, moved into the minimal effect. And at all these levels, it wasn't a cursory look, that's it. Because plaintiff continued to ask for reconsideration, director review, and appeal. I mean, he was entitled to do all of those, wasn't he? Yes, he was, Your Honor. And my argument is that there's a lot more that went on behind the scenes than actually dribbled out into reports and final decisions and boiled down before this court. So this ineffable phrase, it's just a mitigation, just mentioning one factor. We should just say, well, because there's lots of stuff behind the scenes going on,  because of all the stuff going on behind the scenes? I understand, Your Honor, there's trouble with that conclusion or that summary analysis. But we're talking about a lot of back and forth between the appellant and county boards and the Farm Service Agency and the NRCS. And there was a lot of back and forth. And I think everything was fairly aired. The part of the case that I can understand from your perspective is, well, come on, why won't you just help us out here? How difficult is this? It's not going to cost you that much to try to recover some of this westland. Or let's have a compromise. You'll do an acre. So I get your side of it. But his side of it, this is not a huge farm. This is not a couple thousand acre farm. It's a 50 acre farm. That makes this 2.5 acres a pretty material part of the farm. So it has serious economic consequences, whether he gets to farm it or not. So all I see is the agency only thinking about your side of it, not paying attention. In fact, this is a small farmer, small farm, and 2.5 acres is a lot in that context. And the appellant farmed it. I think that the problem for the agency here by proving that it mattered. The problem for the agency, yes, your honor, it did matter. And he continued to farm it. But he transformed it, converted it, manipulated the land until he could farm on it again. And that's the problem, I think, the agency was having at both levels. The NRCS and the Farm Service Agency with respect to the penalties was the game kept changing because the appellant continued on farming the land. He didn't stop and say, wait a minute, let's sit down, let's get this right. He moved on. He got into a mediation agreement which allowed him to manipulate the land. I mean, there is this statutory interpretation question that's the threshold here for us that if he were right about this, everything he did would have been permissible. Right? I mean, the Sixth Circuit hasn't weighed in on it. The Seventh Circuit has a great opinion for you guys. And I know you're trying to get us to do the same thing here. Maybe we will. But until that's done, he had the right to do all that stuff. It just seems really funny to hold that against him until the Sixth Circuit had ruled on it. I don't think they held it against him. They were cooperating with him and allowing him to move forward. But saying, now that you've moved forward and you've converted this land and it's not a minimal effect because you've changed everything. You've turned it into farmland and you've grown crops on it. So now, to some of the effect, the way that they were viewing their statutes and regulations, it tied their hands to say, you have to go through this, jump through this hoop next. Or at least we sit down and I think the district court got it right. I don't think the district court in this case was imposing mitigation on the appellant. It was merely taking a step back and looking and what is the key to this thing? Do you think that's a case where mediation could help? Well, there was mediation in the process which allowed the... In terms of, we have a circuit mediator's office where a case before our court can be mediated. I think he was asking if you thought that might be useful. Sometimes when we have an argument like this, we say, well, we'll withhold a decision for 60 days or whatever and see if our mediator's office working with the parties can come to an agreement. Would that be possibly productive? I'm not sure how productive because when that was discussed or I think when there was some amount of reaching out to the appellant at the agency level, part of the problem with mediating it or coming to some compromise was the way the agency views the statutes and regulations is there has to be some kind of mitigation component to this to come to some compromise and appellant... Sometimes oral arguments at the Sixth Circuit have a way of sharpening the focus of the parties about what's reasonable and what's not. I understand, Your Honor, but in my view, candidly, I think to sit down and have a mediation of this case, it would have to have that mitigation component to it and appellant... When you say that, you mean the claimant would have to be willing to do some mitigation? Yes, Your Honor. In your view, up to now, they've shown zero interest to do anything, right? Correct, Your Honor. But if they were to change their view on that, then might it be mediatable? Well, from my perspective, which is a few steps back from what the agency did, I think so. The way I boil down the case is if the appellant would have come to the mitigation table, something better might have happened. And I know there's appellant's brief talks about, you know, double the amount of land. I don't know that that's true because it never happened. Because on principle... Just remember, they have a right to litigate the threshold question. Yes, Your Honor. Because the threshold question, if they win that, no one has to talk about anything else. So, I mean, it's important to segment those two points, it seems to me. And you may have a very strong position on the first point,  I understand, Your Honor. Anything else? Thank you. I'm sorry, your time's expired. Appellant, you have three minutes. Thank you, Your Honor. A couple of points. The case that Brother Counsel cited talked about a Southern Indiana case. And he mentioned in that case that the farmer had abandoned the wetland. I just wanted to point out that in this case, there were express findings on the record that Mr. Smith had not abandoned the land. Sorry, were you referring to the Horn Farms case? It was a follow-on case in the Southern District of Indiana, Judge. A follow-on. Secondly, I wanted to correct something that Judge Sutton mentioned, is that Mr. Smith owns more land than just this 150-acre field. That's the size of this field. But he also owns other acreage. I didn't want you to be under that misimpression. How much other acreage? Well, it's in the process of... He's sold quite a bit of it. But at this point, I think he owns probably at least 500 acres. Third, I wanted to mention that the mediation that has been proposed, our experience has been exactly as Mr. Schaparsky has said, is that the agency has not been flexible whatsoever with the mitigation requirement. So its litigation position has been perfectly consistent with that. That's with regard to the point up to now. The question, and just an honest procedural question, happens occasionally, is when you've all been briefed and you've heard our comments and so on, people say, now we might be interested in mediating this. We have a pretty good mediator's office. You're not bound to anything. And sometimes we'll say, see what you can do and let us know if you've made any progress. And if not, we'll give you a law. In effect, what I'm hearing is, and there's nothing wrong with it, that previously you haven't been willing to put any mitigation on the table. They haven't been willing to give any ground. They seem to say, maybe if you'll put some mitigation on the table, maybe they would give some ground. Question to you is, any point in letting our mediators have a crack at it with you? You're always willing to talk. I know the briefs come out. Thank you, President Obama. Thank you, Speaker Boehner. We're a bunch of stubborn farmers or whatever. I don't deny it. OK, but you think you might be willing. I've mediated lots of cases. OK, all right. Sorry, I took up your time. You have any other points to make? I have 23 seconds. Well, you can take another 30. The thing that hasn't been discussed enough at this oral argument is the minimal effects analysis. That is an issue that's very important, regardless of how you rule on the other two issues. Farmers across Michigan,  would like the agency to follow the law. Just follow the law and analyze minimal effects. There's no finding you will search in vain throughout this record for any consideration of minimal effects. They keep saying they seriously considered it, yet they don't point to a scrap of evidence to back that up. It's just argument of counsel. So farmers across this district, across the circuit, rather, would appreciate guidance. Thank you. OK, thank you, counsel. That case will be submitted. And the clerk may call the next case.